UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PRISCILLA MATTHEWS,

              Plaintiff,                    CIVIL ACTION NO. 06-11618

         v.                       DISTRICT JUDGE ARTHUR J. TARNOW

MICHAEL BAUMHAFT; UNIVERSAL     MAGISTRATE JUDGE VIRGINIA MORGAN
HOMES, LLC, a Michigan company;
MIDWEST EXPRESS FUNDING, INC.,
a Michigan company; EXACT TITLE,
LLC, a Michigan Company; BARRY A.
ROGOW; REAL FINANCIAL, LLC, a
Michigan company; JODY KLASK
ROGOW; SAMUEL BELL; RONALD
RAHAL; MARKET VALUE APPRAISALS,
LLC, a Michigan company; MARKET
VALUE APPRAISAL, INC., a Michigan
company; COUNTRYWIDE HOME
LOANS, INC., a foreign corporation; and
TICOR TITLE INSURANCE COMPANY,
a foreign corporation,

              Defendant.
_____/

**<u>REPORT AND RECOMMENDATION</u>**

      This matter is before the court on the motion of defendants to dismiss this civil action and

plaintiff's response.  The following motions are addressed by the Report: D/E 6 (Rahal, Market

Value Appraisals LLC, Market Value Appraisals, Inc); D/E 11 (Baumhaft, Universal Homes

LLC, Midwest Express Funding Inc.); D/E 23 (Notice of Joinder in Motions by Jody Rogow,

- 1 -

Bell, Exact Title LLC, Barry Rogow, Real Financial LLC).  Plaintiff brings this action alleging a variety of fraudulent activity by defendants in connection with purchases and financing of local real estate properties for investment.  The complaint alleges a complicated and on-going association of businesses and individuals which worked together to sell overvalued real estate and to arrange mortgages and loans on such properties, and to manipulate the transactions in other ways including fraud and arson, resulting in illegal gains to the enterprise of over twenty million dollars over the past several years.  Plaintiff alleges civil violations of the federal RICO statute, 18 U.S.C. § 1962 *et seq.* (Count I), and supplemental state law claims before the court pursuant to 28 U.S.C. § 1367 for breach of fiduciary duty (Count II), breach of "ordinary care" (Count III), state fraud claims (Count IV), and state security act violations (Count V). Defendants have filed numerous motions to dismiss, for judgment on the pleadings, etc.   For the reasons discussed in this report, it is recommended that the motions be denied.

In the first motion, brought by Ronald Rahal, Market Value Appraisals, LLC and Market Value Appraisals, Inc. (D/E 6), defendants alleged that the claims were not properly pled and that the defendants did not act in concert with Baumhauft and his related entities.  Michael Baumhauft, Universal Homes LLC, and Midwest Express Funding, Inc. then also filed a Motion to Dismiss alleging that the RICO claim was not properly pled and the state law claims predominated over the federal claim, thus they should be dismissed without prejudice.  (D/E 11, see also D/E 30, 48).  The other defendants joined in the motions and/or filed similar motions raising essentially the same or similar issues.   Defendants contend that there is no civil RICO

claim and that in any event the state law claims predominate over the federal claim and should be dismissed.

Following oral argument, the court allowed plaintiff to amend her claims and directed plaintiff to submit a RICO case statement.   The court has reviewed the pleadings and for the reasons discussed in this opinion, recommends that the motions be denied.

**ANALYSIS**

Federal Rule of Civil Procedure Rule 12(b)(6) provides that the court may dismiss a case for failure to state a claim. The issue in resolving such a motion is "not whether plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).   Thus, when reviewing a motion for dismissal, the court is to give the pleader the benefit of the doubt, as to well pleaded facts and the inferences drawn from them.  However, the court need not accept as true legal conclusions or unwarranted factual inferences. Lewis v. ACB Business Services, Inc., 135 F.3d 389 (6th Cir. 1998), citing Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).   The Supreme Court has generally held that at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice and on a motion to dismiss, the court will presume that general allegations embrace those specific facts that are necessary to support the claim. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).   The admonishment to liberally construe plaintiff's claim when evaluating a

- 3 -

Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions.  Id.  A complaint must contain either direct or inferential allegations representing all the material elements to sustain a recovery under some viable legal theory.  Id.  A motion for judgment on the pleadings, FRCP Rule 12(c) is analyzed under the same standard that applies to a Rule 12(b)(6) motion.  Society of Separationists v. Pleasant Grove City, 416 F.3d 1239, 1241 (10th Cir 2005).

In reviewing defendants' motion for dismissal and/or summary judgment, the court has not examined affidavits outside of the RICO case statement.  When the court considers materials submitted in addition to the pleadings, Federal Rule of Civil Procedure 12(b) provides that "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Rule 56 of the Federal Rules of Civil Procedure, provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In ruling on a motion for summary judgment, the Supreme Court's decision in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), provides guidance.  The Court rejected a standard which required moving parties to support their motions for summary judgment with an affirmative evidentiary showing which tended to negate the essential elements of plaintiff's case.  Id. 477 U.S. at 324. Instead the Court said, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the non-moving party's case."  Id.  Of course, "inferences to be drawn from the

- 4 -

underlying facts must be viewed in the light most favorable to the party opposing the motion."
Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986).  Once
the moving party has made this showing, the burden passes to the non-moving party to go
beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.
Id.; see also, Roby v. Center Companies, 679 F.Supp. 664 (E.D. Mich. 1987).  In this case,
discovery is still on-going and it is premature to consider the motions as ones for summary
judgment.

     Title 18 U.S.C. §1962(c) makes it illegal "for any person employed by or associated with
any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to
conduct or participate, directly or indirectly, through a pattern of racketeering activity."  The
RICO Act, 18 U.S.C. § 1961 *et seq.*, provides a civil remedy when an individual is "injured in
his business or property" by virtue of a violation of § 1962 of the Act.  In order to establish a
cause of action, a plaintiff must show (1) that there were two or more predicate offenses; (2) that
an "enterprise" existed; (3) that there was a nexus between the pattern of racketeering and the
enterprise; (4) that an injury to business or property occurred as a result of the above three
factors.  VanDenBroeck v. CommonPointe Mortg. Co., 210 F.3d 696, 699 (6th Cir. 2000).  An
enterprise under RICO has been defined as a "group of persons associated together for a
common purpose of engaging in a course of conduct."  United States v. Turkette, 452 U.S. 576,
583 (1981).  The hallmark of a RICO enterprise is its ability to exist apart from the pattern of
wrongdoing.  See, Atlas Pile Driving Co. v. DiConFin.Co., 886 F.2d 986, 995 (8th Cir. 1989).
Courts look to whether a continuity of structure exists as evidenced by an organizational pattern

or system of authority that provides a mechanism for directing the group's affairs on a continuing rather than an ad hoc or sporadic basis.  United States v. Tocco, 200 F.3d 401, 425 (6th Cir. 2000).  A plaintiff must prove each element of the predicate act or racketeering activity for a civil action under the RICO Act.  Central Distributors of Beer, Inc. v. Conn, 5 F.3d 181, 183-4 (6th Cir. 1993).  Essentially, plaintiff must show enterprise, structure, common purpose and impact on interstate commerce albeit one which may be deminimus.  United States v. Johnson, 440 F.3d 832 (6th Cir. 2006).  These issues present questions of fact.  United States v. Sanders, 928 F.2d 940, 943 (10th Cir. 1991).  RICO does not require proof that either the racketeering enterprise or the predicate acts of racketeering were motivated by an economic purpose.  National Organization for Women v. Scheidler, 510 U.S. 1215 (1994).

**BACKGROUND**

Depending on which party's recitation of the facts one believes–and they are quite disparate–the case involves merely two local sales of single family homes or an on-going conspiracy to defraud victim-investors of millions of dollars through a RICO enterprise.  From defendants' perspective, plaintiff Mathews only alleges that she purchased two single-family homes for investment.  She relied on the advice of defendant Michael Baumhauft and his associated entities.  The homes have not been properly managed and have not produced the amount of income which Baumhauft indicated they would.  Thus, there may be a lawsuit but it would be in state court and not present a federal RICO claim.

Alternatively, viewed from plaintiff's perspective, the allegations are that defendants engaged in a pattern of racketeering activity over at least a period of four years, with predicate

- 6 -

acts of tax evasion, identity fraud, common law and statutory fraud, money laundering,

obstruction of justice, and arson.  The enterprise operates through a web of individuals and

entities which identify, acquire, and assist in the purchase of "investment real estate."  Some of

the entities are not *bona fide* as they have not properly filed with the state or otherwise

demonstrated a legal corporate status.  Neither Baumhauft nor his directly controlled entities,

including at least Universal Homes and Midwest Express Funding, have filed income tax returns

for this relevant period.  Plaintiff is only one of several other individuals who was similarly

defrauded by Baumhaft and others involved in the enterprise.  These others involved in the

enterprise include Allen Shifman, Grace Title Agency, Marc Danyal, Interstate Funding, Paul

Robinson, BestBank, Kaur Construction, Stephanie Hillman, and others.  These participants

conspired to and did falsify real estate documents, including federally-required HUD-1

documents.  There is an impact on interstate commerce as many of the victim-investors as well

as perpetrators reside out of state, e.g. Lucases (Florida), Salador (Missouri), Blateri (Texas),

Rothstein and Arnswald (California).  Many of the trails lead to Illinois, with Jeffrey Kepes

alleged to be Baumhauft's main link to funding being based in Illinois, and eight other

participants who may be victims or coconspirators reside there.  (See, D/E 45 p.22, n.23)  In

addition, plaintiff alleges that many of the co-conspirators have lied under oath at various

specific creditor exams and other proceedings, with such perjury designed to obstruct justice.

**SUFFICIENCY OF RICO CASE STATEMENT**

The court has reviewed plaintiff's RICO case statement.  Plaintiff's RICO case statement

is sufficient to survive the motion to dismiss and/or for summary judgment.  Plaintiff has

adequately alleged the requisite hierarchy and decision-making structure, an association-in-fact enterprise comprised of the defendants and others, and the requisite continuity.  See, First Magnus Financial Corp. v. Star Equity Funding, L.L.C., 2007 WL 414272 (D. Kan. 2007) Slip Copy.  The case statement lays out an enterprise, predicate offenses, a nexus between the enterprise and a pattern of racketeering, and an injury.  For example, according to plaintiff, in the properties sold to plaintiff Matthews, the allegations demonstrate a clear inference of a fraudulent increase in value:

    1) 9250 Trinity: Acquired 3/16/04 for $43,500; sold on 5/26/84 for $84,500.

    2) 15858 Robson: Acquired on 6/2/04 for $65,000; sold 6/17/04 for $125,500.

    The vendor in each case was Midwest Express Funding LLC–the allegedly fictitious company  controlled by Baumhauft.  Baumhauft signed the papers on each and provided the appraisal documents alleged to be fraudulently inflated.  Because of the role of Midwest Funding, there is also a claim that there are problems with the title to the property.

    According to the RICO case statement, some coconspirators provide capital so that the enterprise can acquire its "wholesale" inventory of property such as the two Matthews' properties and reap substantial monetary gains for the short-term use of the money.  Other individuals procure loans based on the fraudulent appraisals, which loans must be repaid by the victim-investors.  Other coconspirators launder the proceeds.  For example, plaintiff identifies Frank Blateri as an individual who joined with Baumhaft to form a "capital" firm (Interstate Funding) in May, 2006.  Within a month or two Blateri and Baumhauft laundered almost one million dollars.  (RICO statement p 4, 2.01-2.19)  Plaintiff further alleges that she and others like

- 8 -

her suffered economic injury, in that she is liable for a note and a mortgage on a property worth substantially less than the mortgage amount and which may have title problems.  The same or similar pattern of defrauding investors is alleged to be present in several other transactions.  Working with the attendant coconspirators, Baumhauft would make particular representations in each transaction–to arrange for tenants, to pre-qualify tenants, to make payments if the tenants were not placed, etc–and in each transaction provided a falsely inflated appraisal of the property.  As noted by the Fourth Circuit, this kind of enterprise which engages in fraudulent and illegal practices poses a special threat to social well-being and is particularly appropriate for civil RICO liability.  Menasco, Inc. v. Wasserman, 886 F.2d 681, 683-84 (4th Cir. 1989).

Defendants rely on Craighead v. E.F. Hutton & Co., 899 F.2d 485 (6th Cir. 1990) for support that plaintiff has failed to plead a proper RICO conspiracy claim.  There, investors brought a RICO claim against a securities broker dealer and an account representative.  The court found that the unrelated and unexplained events alleged in the complaint were insufficiently particular to establish predicate acts or a pattern of racketeering.  Unlike that case, plaintiff's case statement here is detailed and sufficient.

Defendants Rahal, Market Value Appraisal LLC, and Market Value Appraisal Inc. believe dismissal is proper because all that is at issue is plaintiff's claim that in one of the two properties sold to plaintiff Mathews there is an appraisal fee going to defendant.  However, defendants were involved in other transactions, specifically the Chen transaction, one of the other alleged victim-investors.  The defendants contend that the state court dismissed charges there and this court must grant dismissal here.  That argument lacks merit.  In a RICO action,

- 9 -

even a criminal act for which the person was acquitted in state court may serve as a predicate act in support of the claim.  See, <u>United States v. Powell</u>, 469 U.S. 57 (1984).  It is no defense to the civil RICO charge that a dismissal was granted in state court.  Whether construed as insufficient evidence argument or an estoppel claim, defendants' argument necessarily assumes that the dismissal on the predicate offense was proper–this is not necessarily the case.  See <u>Powell</u> at 67. Whether ultimately Market Value or its associated defendants may be exonerated of RICO involvement is a question for a later time, as it cannot be answered now.  Given the important role of the fraudulent appraisal in the predicate acts alleged, Rahal, Market Value LLC, and Market Value Inc, the provider of those appraisals, cannot be dismissed.

**RULE 9(B)**

Some of the predicate acts in the RICO claim and in the state claims alleged are fraud-related.  Defendants contend that they are entitled to dismissal due to the plaintiff's failure to comply with FRCP Rule 9(b) which states that fraud should be alleged with particularity.  Like many cases in this area, the alleged facts involve a complicated series of actions by many individuals and companies.  These companies and individuals play various roles, some allegedly legitimately and others which are used only as vehicles to illegally transfer or launder money and to convince the victim-investors of the authenticity of the transaction.  Plaintiff has specified particular real estate transactions, particular representatives, and an overall scheme which has obtained approximately $20 million dollars.  The basis for the fraud is laid out in the RICO case statement and identifies representations by Baumhauft that he would manage and rent the property, and that the properties had a particular value, which he purported to demonstrate

through phony (i.e. fraudulently inflated) real estate appraisals to convince the victim investor to buy the property.  Real estate appraisals are more than a mere statement of opinion and courts have held that they can serve as a basis for fraud, e.g. Superior Bank F.S.B. v. Tandem Nat. Mortg. Inc., 197 F.Supp.2d 298 (D. Md 2000).  The RICO statement indicates that Baumhauft would then arrange financing obtained through a Baumhauft co-conspirator Jeffrey Kepes who would procure a lender based on the fraudulent appraisal and the victim-investor's good credit rating.  After the closing, the victim-investor would be left with a note and mortgage, on which he or she owed hundred of thousands of dollars, for property which was not worth the mortgage value.  Further, plaintiff has detailed the interstate nature of these transaction and the affect on interstate commerce.   He has identified the role of other co-conspirators in the concealment of assets and duping of the victim-investors.  This is sufficient to comply with Rule 9(b) as against the motion to dismiss.

Likewise, plaintiff has identified with particularity and clarity the arson-based predicate acts.  The five "Thompson" transactions took place in April 2003 and the enterprise arranged financing for $634,000 to an individual who could not legitimately qualify but received approval based on fraudulent information about the creditor and the relationship between the enterprise, Baumhaft and Loan Giant (a lender accused in state court of fraudulent lending practices and placed in receivership, Case No. 05-066193 CH).  Two of the "Thompson" properties had fires and sought insurance reimbursement, although one was a vacant lot and the premium was returned, but the other apparently collected.  (RICO Case Statement D/E 45, p. 6-7, 2.16)  False

names were used on the HUD-1 documents and the resulting payments back to the enterprise

serve as the allegations of bankruptcy and wire fraud.  (RICO case statement p. 7, 2.18)

The defendants claim that they do not know some of the other defendants, but this is not

a defense.  It is not necessary for a particular co-conspirator to know any or all of the others

involved so long as he or she has agreed to participate.  United States v. Snead, 527 F.2d 590

(4th Cir 1975), citing Hyde v. U.S. 225 U.S. 347 (1912).  Any failure to fulfil 9(b) pleading in

the complaint, and court does not find that there was such, is remedied by the subsequent RICO

case statement filed by plaintiff (D/E 45).

Plaintiff has alleged sufficient facts to survive the current motions.  Plaintiff has

identified specific facts which if proved would show a plan by an enterprise, a pattern of

racketeering activity, requisite predicate acts, and economic injury to one or more persons.

Further, sufficient facts are alleged to show the role of particular alleged conspirators who shared

in the general conspiratorial objective, and an overt act and/or two or more predicate acts were

committed in furtherance of the conspiracy and that a reasonable jury could determine that some

or all defendants, with the assistance of other individuals in whole or in part, conspired to violate

the law and that two or more predicate acts were committed in furtherance of that conspiracy.

Thus, the motions to dismiss and for relief under Rule 9(b) should be denied.

Also, it should be noted that at this stage of the proceedings, where discovery has not

been completed, the motion, if taken as one for summary judgment, is premature.  Defendants

seek summary judgment on essentially fact-based issues.  There are many documents,

depositions, and matters which must be discovered.  While plaintiff is seemingly very well

versed in the activities of defendants, these activities must be proven by admissible evidence. The investigation and procurement of that evidence is appropriately a task for discovery. It is only after those matters have been concluded that a motion for summary judgment may be ripe for filing.

The court has closely reviewed the plaintiff's RICO case statement. It is specific, with a clear delineation of the enterprise, the predicate acts, the participants, and the victims. The case is broad, the fraud allegations are pervasive and the number of players substantial. Plaintiff has clearly satisfied the goal of the RICO case statement to identify RICO elements, and this claim should not be dismissed on a Rule 12(b) motion. The allegations, if shown to be true, are clearly the kind of conduct designed to be captured by the RICO statute and are an appropriate use of federal judicial resources.

**THE STATE LAW CLAIMS**

The state law claims are related to the alleged RICO conspiracy. Some of them will be part of the proof of the RICO predicate acts; others may not. It will be difficult as the case approaches trial to deal with issues of jury instructions, but dismissal to permit refiling in state court is likely to cause other confusion and delay.

Supplemental jurisdiction is granted to the federal court for state claims related to the federal cause of action. Combining the archaic ancillary and pendent jurisdiction doctrines, Title 28 U.S.C. § 1367 codified the federal court's jurisdiction to handle associated state claims. Here, there are some issues regarding the ability to separate individual elements of state claims against particular individuals and to formulate jury instructions. However, the elements of the

- 13 -

state claims are likely to be part and parcel of proof of the predicate acts for the civil RICO case. Discovery would be overlapping and the witnesses would likely be the same. The federal and state claims arise from a common nucleus of facts.  Keeping the state claims would eliminate the possibility of inconsistent verdicts and remedies.  Thus, it would make little sense for the court to dismiss the claims at this stage.  It may be that after discovery summary judgment would be appropriate on one or more of the state claims and then that matter would be decided without a parallel state proceeding.

Thus, it is recommended that the defendants' motion to dismiss the state claims be denied.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

- 14 -

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan_____
Virginia M. Morgan
United States Magistrate Judge


Dated:  February 23, 2007

_____

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on February 23, 2007.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan